## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

JOHN J. SULLIVAN,                              )
                                               )
        Plaintiff,                           )
                                               )
v.                                             )          No. 2:22-cv-00058-JAR
                                               )
STATE OF MISSOURI, et al.,                     )
                                               )
        Defendants.                          )

### MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff John J. Sullivan for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed plaintiff's prior filings in federal court, the Court has determined that plaintiff, while incarcerated, has filed three or more civil actions that were dismissed as frivolous, malicious, or for failure to state a claim. Accordingly, for the reasons discussed below, the Court will deny plaintiff's motion for leave to proceed in forma pauperis, and dismiss his complaint without prejudice to the filing of a fully-paid complaint. *See* 28 U.S.C. § 1915(g).

### The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Northeast Correctional Center in Bowling Green, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming the State of Missouri, Judge Christine Carpenter, Prosecutor Tracy Gonzales, Public Defender Jenean Thompson, Shasta Haney, Jenny Barnhill, and Samanta Sullivan as defendants. (Docket No. 1 at 2-4). Judge Carpenter and Prosecutor Gonzales are sued in their official capacities only. (Docket No. 1 at 2-3). Plaintiff does not indicate the capacity in which the

remaining defendants are sued. The complaint contains allegations regarding constitutional misconduct during his state criminal case.[1]

The "Statement of Claim" section of the form complaint has been left blank. Instead, plaintiff refers the Court to a series of attached exhibits lettered A through H. (Docket No. 1-1 at 1).

Exhibit A is a "Statement of Uncontroverted [Material] Facts" as to the State of Missouri. In the exhibit, plaintiff accuses the State of Missouri of either "unlawfully obstructing [his] access to evidence," or unlawfully altering or destroying "material having potential evidentiary [value]." (Docket No. 1-1 at 2). He further alleges that the State of Missouri tried to prevent him "or his counsel from making statements in the presence of the jury or adducing any testimony or evidence" regarding "copies of Facebook messenger communication" between his victim and another individual. (Docket No. 1-1 at 3). More specifically, plaintiff explains that this communication was made "close in time to when [plaintiff's victim] made disclosures resulting in the criminal charges" against him, and is inadmissible hearsay. Plaintiff also concludes that this communication does not fall within any exception to the hearsay rule. (Docket No. 1-1 at 5). Attached to Exhibit A is a docket sheet from *Sullivan v. State of Missouri, et al.*, No. 2:19-cv-4210-BCW (W.D. Mo.), a "Memo to Casefile" regarding Facebook postings, and a page of the docket sheet from his state criminal case. (Docket No. 1-1 at 6-9).

---

[1] The Court has reviewed this case on Case.net, Missouri's online case management system, and will take judicial notice of this public record. *See Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"). Based on this review, the Court has determined that plaintiff was charged by information with two counts of second-degree statutory sodomy on February 27, 2015. *See State of Missouri v. Sullivan*, No. 15BA-CR00498-01 (13th Jud. Cir., Boone County). On April 12, 2017, he was found guilty on both counts following a jury trial. On May 22, 2017, he was sentenced to seven years' imprisonment on each count, the sentences to run concurrently. Plaintiff did not file a direct appeal.

Exhibit B is a "Statement of Uncontroverted [Material] Fact" as to Prosecutor Gonzales. (Docket No. 1-2 at 1). In the exhibit, plaintiff states that at an August 2016 deposition, "the story changed," so that Gonzales knew his charges were false. Plaintiff also accuses Gonzales of assisting "a witness to testify falsely," of making "a frivolous discovery request," of seeking "a waiver of important pretrial rights" from him when he was "an unrepresented accused,"[2] and of making an inappropriate "extrajudicial comment that [had] a substantial likelihood of heightening public [condemnation] of the accused." (Docket No. 1-2 at 1-2). Attached to Exhibit B is part of the docket sheet for plaintiff's state criminal case, and a portion of a trial transcript. (Docket No. 1-2 at 3-7).

Exhibit C is another "Statement of Uncontroverted Material Facts," again focusing on Prosecutor Gonzales. (Docket No. 1-3 at 1). In particular, plaintiff asserts that Gonzales showed four or five videos during his trial, and that one of them showed "someone in a chair crying for over [an] hour." He states that the person's face was obscured, and that he "could not tell if it was the so called witness." Plaintiff further states that no questions were asked, and that this video "was not any kind of [evidence]," but nevertheless worked "to sway the jury." He also explains that when it was his turn to call endorsed witnesses, Gonzales said "they did not [need] them," and told the jury "everyone does it," which plaintiff found "unprofessional." Attached to Exhibit C is a docket sheet from the United States Court of Appeals for the Eighth Circuit, in which plaintiff requests "videos to support his case." (Docket No. 1-3 at 2).

---

[2] Plaintiff was initially represented by counsel in his criminal case. On September 9, 2016, however, he announced that he did not want to be represented by a public defender, and that he intended to represent himself at trial. *State of Missouri v. Sullivan*, No. 15BA-CR00498-01 (13th Jud. Cir., Boone County). The circuit court advised plaintiff to obtain counsel, and on December 8, 2016, appointed Public Defender Thompson under RSMo § 491.680.7 for purposes of deposing the victim. Subsequently, on March 3, 2017, the circuit court determined that plaintiff had been fully informed of his right to counsel, that he was literate and mentally competent, and that he should be allowed to represent himself. Plaintiff thereupon represented himself at his trial and sentencing, with Thompson appearing as counsel for the deposition only.

Exhibit D is a "Statement of Uncontroverted [Material] Facts" regarding Judge Carpenter. (Docket No. 1-4 at 1). In the exhibit, plaintiff first asserts that at a pretrial hearing on December 28, 2015, Judge Carpenter denied the State of Missouri's motion to continue. Next, on January 16, 2016, plaintiff's attorney told the judge that plaintiff had complained about the victim's two hospitalizations. Judge Carpenter allegedly "said she did not want to [hear] it." On November 28, 2016, plaintiff states that he showed Judge Carpenter a Facebook page in which the victim told her sister about "hurting herself because of Shasta Haney," and that he "had nothing to do with it." At a later hearing, on March 3, 2017, Judge Carpenter purportedly asked whether the state could "hit him with another charge." Later, during the video deposition of the victim, plaintiff complains that Judge Carpenter stopped in the "middle of a [question] about the lake they [cannot] find." (Docket No. 1-4 at 2).

In addition, plaintiff is upset that when he tried to call an endorsed witness at trial, he learned that the prosecution had not brought that witness to court, because the "state said they did not [need] her." According to plaintiff, Judge Carpenter offered to allow him to use a phone to call the witness, but insists that the judge knew he "had no phone number or who [he] was talking to." Based on these facts, plaintiff states that Judge Carpenter violated his right to direct examination, to face his accuser, to cross examination, to have a speedy trial, and to have a "real lawyer."

Exhibit E is a "Statement of Uncontroverted [Material] Facts" as to Public Defender Thompson, who had been appointed to plaintiff for the limited purpose of attending a deposition. (Docket No. 1-5 at 1). In the exhibit, plaintiff states that Thompson was ordered to represent him in March 2015, but that "she refused," meaning he had no counsel "at the preliminary hearing." In September 2016, Thompson was again ordered to be his attorney, and got into an argument with Judge Carpenter. This led to Thompson filing "appeals in [Kansas City] and the [Missouri Supreme

4

Court]." Eventually, Thompson had plaintiff come to her office, but he was there for less than ten minutes, and he did not see Thompson again until the video deposition.

At the video deposition, Public Defender Thompson allegedly began without talking to plaintiff. Then she asked the victim three questions that the judge said for the "jury to disregard." Thompson's fourth question had to do with the identification of a lake.[3] (Docket No. 1-5 at 2). During this line of questioning, Judge Carpenter called a recess. Thompson met with plaintiff, and plaintiff requested that Thompson ask certain questions "and show [his] diagram." Thompson refused, and plaintiff told her she had been appointed to represent him, and if she was not going to do what he asked, to not come back. According to plaintiff, Thompson went back anyway and asked the victim a series of questions that elicited negative replies. Plaintiff contends that this violated his right to counsel, his right to show evidence, and his right to cross examine witnesses. He also states that Thompson unlawfully obstructed the jury's "access to evidence," as well as unlawfully concealed documentary "material having potential evidentiary value." (Docket No. 1-5 at 4).

Exhibit F is a "Statement of Uncontroverted [Material] Facts" regarding Shasta Haney. (Docket No. 1-6 at 1). In the exhibit, plaintiff states that on January 1, 2015, Haney and Jenny Barnhill wrote a "false lie" on the victim's "Facebook account." On February 8, 2015, Haney called the Children's Division of Family Services, as well as the sheriff, giving them her phone, which had "something concerning on it."

Exhibit G is a "Statement of Uncontroverted [Material] Facts" about Jenny Barnhill. In the exhibit, plaintiff states that on January 1, 2015, Barnhill and Haney drove to the victim's house in

---

[3] Based on allegations elsewhere in the complaint, including an attached Boone County Sheriff Department Offense Report, it appears that the significance of the lake's identity has to do with the victim's statement that some of plaintiff's criminal activity took place "at the lake." (Docket No. 1-8 at 2).

5

Barnhill's van. They picked the victim up, and drove her back to Barnhill's house. There, Barnhill and Haney allegedly "made up the Facebook lie on the [victim's] phone."

Exhibit H is a "Statement of Uncontroverted [Material] Fact" as to Samanta Sullivan. (Docket No. 1-8 at 1). In the exhibit, plaintiff states that on March 4, 2015, Sullivan went to the Sheriff's Department and made "up this lie over and over." He states that Sullivan and Haney "lied" when they said his criminal activity "was [supposed] to happen on [February 8] at a lake" that he had "never been at." Plaintiff further alleges that Sullivan perjured herself during the video deposition by giving "false testimony under oath in a judicial proceeding." Attached to Exhibit G is a Boone County Sheriff Department Offense Report. (Docket No. 1-8 at 2).

Based on these facts, plaintiff is seeking $5,000 a month in lost wages since February 2015, $35,000 for his lost house, $70,000,000 for tools, furniture, defamation of character, and false imprisonment, and $70,000,000 for defamation of his name. (Docket No. 1 at 6).

## Discussion

Plaintiff is a self-represented litigant who has filed a civil action pursuant to 42 U.S.C. § 1983, alleging various constitutional violations during a state criminal case that resulted in his conviction in 2017. Along with his complaint, he has filed a motion for leave to proceed in forma pauperis, seeking to commence this action without prepaying the required filing fee. While he has been incarcerated, however, plaintiff has filed at least three prior cases that were dismissed on the basis of frivolity, maliciousness, or failure to state a claim. As such, his motion to proceed in forma pauperis must be denied, and this case dismissed without prejudice to plaintiff refiling a fully-paid complaint.

6

## A. 28 U.S.C. § 1915(g)

Under 28 U.S.C. § 1915, this Court may authorize the commencement of a civil action without prepayment of the filing fee "by a person who submits an affidavit that includes a statement of all such assets such prisoner possesses," and that indicates "that the person is unable to pay such fees." *See* 28 U.S.C. § 1915(a)(1). The Prison Litigation Reform Act, though, "enacted a variety of reforms designed to filter out the bad [prisoner] claims and facilitate consideration of the good." *Jones v. Bock*, 549 U.S. 199, 204 (2007). One of these reforms is what is commonly known as the "three strikes" provision of 28 U.S.C. § 1915(g). *Orr v. Clements*, 688 F.3d 463, 464 (8th Cir. 2012). Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This section does not apply unless the inmate litigant has three strikes at the time he filed his lawsuit or appeal. *Campbell v. Davenport Police Dep't*, 471 F.3d 952, 952 (8th Cir. 2006). However, "[a] prior dismissal on a statutorily enumerated ground counts as a strike even if the dismissal is the subject of an appeal." *Coleman v. Tollefson*, 575 U.S. 532, 537 (2015). In other words, "a prisoner who has accumulated three prior qualifying dismissals under § 1915(g) may not file an additional suit in forma pauperis while his appeal of one such dismissal is pending." *Id.* at 541. For purposes of this section, a dismissal for failure to state a claim counts as a strike whether the dismissal was with prejudice or without. *Lomax v. Ortiz-Marquez*, 140 S.Ct. 1721, 1723 (2020).

7

**B. Plaintiff's Previous Strikes**

A review of plaintiff's federal court filings shows that plaintiff has accumulated at least six strikes. That is, the Court has determined that plaintiff has filed at least six prior cases while incarcerated that were subsequently dismissed for frivolousness, maliciousness, or failure to state a claim. *See Gonzalez v. United States*, 23 F.4th 788, 790 (8th Cir. 2022) (explaining that court "evaluating a prisoner complaint is the only one who can look backwards and determine whether the first three actions were dismissed on one or more of the listed grounds"). For purposes of incarceration, the Court looks to plaintiff's status at the time he filed the action. *See Williams v. Scalleta*, 11 Fed. Appx. 677, 678 (8th Cir. 2001) (explaining that the term "prisoner…refers to the individual's status at the time the civil action is filed or appealed"). Below, the Court has set forth plaintiff's six strikes.

First, on September 28, 2018, while incarcerated at the Farmington Correctional Center (FCC), plaintiff filed a prisoner civil rights action under 42 U.S.C. § 1983, naming a judge, two attorneys, the State of Missouri, the Boone County Jail, and the Boone County Court as defendants. *See Sullivan v. Harris, et al.*, No. 2:18-cv-4203-BCW (W.D. Mo.). He sought leave to proceed in forma pauperis, which was granted. Following initial review pursuant to 28 U.S.C. § 1915A, the complaint was dismissed for failure to state a claim on October 3, 2018. Plaintiff did not file an appeal.

Second, on October 29, 2018, while incarcerated at the FCC, plaintiff filed a prisoner civil rights action under 42 U.S.C. § 1983, naming the Bates County Circuit Court, a prosecutor, the sheriff, and a public defender as defendants. *See Sullivan v. Bates County Circuit Court, et al.*, No. 4:18-cv-861-GAF (W.D. Mo.). He sought leave to proceed in forma pauperis, which was granted.

Following initial review pursuant to 28 U.S.C. § 1915A, the complaint was dismissed for failure to state a claim on October 30, 2018. Plaintiff did not file an appeal.

Third, on February 22, 2019, while incarcerated at the FCC, plaintiff filed a prisoner civil rights action under 42 U.S.C. § 1983, naming a judge, an attorney, and the Missouri State Public Defender as defendants. *See Sullivan v. Harris, et al.*, No. 2:19-cv-4039-BCW (W.D. Mo.). He sought leave to proceed in forma pauperis, which was granted. Following initial review pursuant to 28 U.S.C. § 1915A, the complaint was dismissed for failure to state a claim on March 19, 2019. Plaintiff did not file an appeal.

Fourth, on October 23, 2018, while incarcerated at the FCC, plaintiff filed a prisoner civil rights action under 42 U.S.C. § 1983, naming the State of Missouri, Corizon, the prison medical department, a nurse, and a doctor as defendants. *See Sullivan v. State of Missouri, et al.*, No. 4:18-cv-1816-JMB (E.D. Mo.). He sought leave to proceed in forma pauperis, which was granted. Following initial review under 28 U.S.C. § 1915, plaintiff was given two opportunities to amend his complaint. On March 14, 2019, the second amended complaint was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim. Plaintiff did not file an appeal.

Fifth, on May 23, 2019, while incarcerated at the FCC, plaintiff filed a prisoner civil rights action under 42 U.S.C. § 1983, naming the Missouri Department of Corrections, a corrections manager, a correctional official, and a teacher as defendants. *See Sullivan v. Cofer, et al.*, No. 4:19-cv-1504-PLC (E.D. Mo.). He sought leave to proceed in forma pauperis, which was granted. Following initial review under 28 U.S.C. § 1915, the complaint was dismissed on February 25, 2020 for failure to state a claim under § 1915(e)(2)(B). Plaintiff did not file an appeal.

Sixth, on July 18, 2019, while incarcerated at the FCC, plaintiff filed a prisoner civil rights complaint under 42 U.S.C. § 1983, naming two correctional officials as defendants. *See Sullivan*

9

*v. Austin, et al.*, No. 4:19-cv-2044-DDN (E.D. Mo.). He sought leave to proceed in forma pauperis, which was granted. Following initial review under 28 U.S.C. § 1915, the complaint was dismissed on February 24, 2020 for failure to state a claim under § 1915(e)(2)(B). Plaintiff did not file an appeal.

The Court further notes that the United States District Court for the Eastern District of Missouri has previously determined that plaintiff is subject to the three-strikes provision, and has denied him in forma pauperis status. *See Sullivan v. MOSOP, et al.*, No. 4:19-cv-2623-PLC (E.D. Mo. Sept. 24, 2019) (motion to proceed in forma pauperis denied and case dismissed under 28 U.S.C. § 1915(g) and § 1915(e)(2)(B) on May 26, 2020);[4] *Sullivan v. State of Missouri, et al.*, No. 4:19-cv-3139-JMB (E.D. Mo. Nov. 22, 2019) (in forma pauperis status revoked and case dismissed under 28 U.S.C. § 1915(g) on June 12, 2020); *Sullivan v. State of Missouri, et al.*, No. 4:19-cv-3184-NAB (E.D. Mo. Nov. 21, 2019) (motion to proceed in forma pauperis denied and case dismissed under 28 U.S.C. § 1915(g) and § 1915(e)(2)(B) on May 14, 2020);[5] and *Sullivan v. Missouri Department of Corrections, et al.*, No. 4:21-cv-298-SEP (E.D. Mo. Mar. 9, 2021) (motion to proceed in forma pauperis denied and case dismissed under 28 U.S.C. § 1915(g) and 28 U.S.C. § 1915A on April 30, 2021).[6]

---

[4] Plaintiff filed an appeal from this dismissal. On December 3, 2020, the United States Court of Appeals for the Eighth Circuit dismissed the appeal for failure to prosecute, after plaintiff failed to pay the filing fee or demonstrate eligibility to proceed in forma pauperis under 28 U.S.C. § 1915(g). *Sullivan v. MOSOP, et al.*, No. 20-2813 (8th Cir. 2020).

[5] Plaintiff filed an appeal from this dismissal. On December 3, 2020, the United States Court of Appeals for the Eighth Circuit dismissed the appeal for failure to pay the filing fee or demonstrate eligibility to proceed in forma pauperis under 28 U.S.C. § 1915(g). *Sullivan v. State of Missouri, et al.*, No. 20-2685 (8th Cir. 2020). Plaintiff subsequently sent a letter to the Court of Appeals, advising them that he had paid the full appellate filing fee. On March 23, 2021, the Court of Appeals recalled the mandate, vacated the judgement, and reopened the appeal. On March 24, 2021, the Court of Appeals affirmed the Court's dismissal under 28 U.S.C. § 1915(e)(2)(B).

[6] Plaintiff filed an appeal from this dismissal. On June 24, 2021, the United States Court of Appeals for the Eighth Circuit denied his motion for leave to proceed in forma pauperis on appeal, and dismissed the appeal for failure to pay the filing fee or demonstrate his eligibility under 28 U.S.C. § 1915(g). *Sullivan v. Missouri Department of Corrections, et al.*, No. 21-2198 (8th Cir. 2021). The Court of Appeals subsequently denied his petition for rehearing as untimely, and denied his motion to file an amended complaint.

As explained above, plaintiff has accumulated more than three strikes under 28 U.S.C. § 1915(g). In particular, the Court has identified six § 1915(g) strikes from cases filed in both the Western and Eastern Districts of Missouri. All of these strikes occurred before plaintiff filed the instant action on August 29, 2022. Therefore, he cannot proceed in forma pauperis unless the imminent danger exception applies.

### C. Imminent Danger

Prisoners who have had three previous civil lawsuits or appeals dismissed as frivolous, malicious, or for failure to state a claim must prepay the entire filing fee. *Lyon v. Krol*, 127 F.3d 763, 764 (8th Cir. 1997). Nevertheless, pursuant to 28 U.S.C. § 1915(g), an indigent inmate who has acquired three strikes may still file a lawsuit if he or she is under imminent danger of serious physical injury. *Higgins v. Carpenter*, 258 F.3d 797, 800 (8th Cir. 2001). This exception provides a "safety valve for the three strikes rule to prevent impending harms." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). However, for this exception to apply, an otherwise ineligible prisoner must be in imminent danger at the time of filing. *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998). Allegations of past imminent danger are not sufficient to trigger the exception to § 1915(g). *Id.* Furthermore, the prisoner must present "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Martin*, 319 F.3d at 1050.

In this case, plaintiff acknowledges in his complaint that he is subject to the three-strikes provision in 28 U.S.C. § 1915(g). (Docket No. 1 at 9). Nevertheless, he states that he is "under imminent [danger] of serious physical [injury]." This contention is baseless, and entirely unsupported.

11

Nothing in the complaint demonstrates that plaintiff is in danger of any physical injury whatsoever, serious or otherwise. To the contrary, his allegations concern purported constitutional violations during a criminal case that began in 2015, and ended in a conviction in 2017. For example, he is upset at his judge for certain rulings, upset at the prosecutor for her presentation of his case, and upset at his limited-purpose attorney for her handling of a deposition. There is no indication that defendants threatened his physical safety back then, and certainly no indication that defendants are doing anything now – five years and seven months after his state criminal case ended – to threaten him with imminent bodily harm. Put shortly, the allegations in the instant complaint do not implicate activity that resulted or could result in serious physical injury. Because plaintiff has failed to show that the exception to the three-strikes provision in 28 U.S.C. § 1915(g) applies to him, the Court will deny his motion for leave to proceed in forma pauperis, and will dismiss this action without prejudice to plaintiff refiling a fully-paid complaint.

**D. Dismissal Under 28 U.S.C. § 1915**

During his time as a prisoner, plaintiff has filed at least three cases while proceeding in forma pauperis that have been dismissed as frivolous, malicious, or for failure to state a claim. Thus, he can no longer proceed in forma pauperis unless he can demonstrate that he is in imminent danger of serious physical injury. As explained above, this exception to 28 U.S.C. § 1915(g) is not applicable. Even if the Court were to grant him in forma pauperis status, however, his case is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

**i.      Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief,

which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

13

###### ii.      Claim Against the State of Missouri

Plaintiff's claim against the State of Missouri is subject to dismissal for two reasons. First, 42 U.S.C. § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). In this case, plaintiff is suing the state for money damages. As the state is not a § 1983 "person," plaintiff has not established an essential element of a § 1983 claim. Therefore, the claim is subject to dismissal.

Second, plaintiff's claim against the State of Missouri is barred by sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in

which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). The Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a state waives its immunity to suit in federal court. *Id.* at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception does not apply because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is also inapplicable because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course

15

of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

Here, plaintiff's claim against the State of Missouri is barred by the doctrine of sovereign immunity, regardless of the type of relief he is seeking. Furthermore, neither of the exceptions to the application of sovereign immunity are present in this case. Therefore, for this reason as well, plaintiff's claim against the State of Missouri is subject to dismissal.

### iii.    Claim Against Judge Carpenter

Plaintiff has sued Judge Carpenter in her official capacity only. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, plaintiff alleges that Judge Carpenter is a circuit judge employed by the State of Missouri. As such, the official capacity claim against her is treated as being made against the State itself, her employer. However, an official capacity claim for money damages against a state employee acting in her official capacity is barred under the Eleventh Amendment. *See Andrus ex*

*rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). Therefore, the official capacity claim against Judge Carpenter is subject to dismissal.

Even if the Court were to treat plaintiff's claim against Judge Carpenter as being made in her individual capacity, it would still fail due to judicial immunity.

Judicial immunity provides judges with immunity from suit, allowing them to exercise the authority in which they are vested, and giving them the freedom to act upon their convictions. *See Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019).

A judge's immunity from 42 U.S.C. § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). *See also Justice Network, Inc.*, 931 F.3d at 760 (stating "that to determine whether an act is judicial, courts look to the particular act's relation to the general function normally performed by a judge").

17

Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. In the context of judicial immunity, however, the scope of the judge's jurisdiction is construed broadly. *Justice Network, Inc.*, 931 F.3d at 762. "[A]n action – taken in the very aid of the judge's jurisdiction over a matter before him – cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

In this case, plaintiff is suing Judge Carpenter for decisions she made in his criminal case, including rulings she made on motions, her handling of a video deposition, and her handling of his trial. Nothing she is accused of doing can be construed as a non-judicial action. In addition, plaintiff does not allege that Judge Carpenter acted in the complete absence of jurisdiction. As such, Judge Carpenter is immune from suit, even if her rulings were in error. Therefore, any individual capacity claim against Judge Carpenter is subject to dismissal.

### iv.    Claim Against Prosecutor Gonzales

As with Judge Carpenter, plaintiff has sued Prosecutor Gonzales in an official capacity only. An official capacity claim against an individual is treated as being made against the governmental entity that employs the individual. *See Johnson*, 172 F.3d at 535. *See also Brewington*, 902 F.3d at 800 (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); and *Kelly*, 813 F.3d at 1075 (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"). Here, Gonzales is alleged to be a prosecutor in Boone County, Missouri. Thus, the official capacity claim against her is treated as being made against the county itself, which employs her.

18

A local governing body such as Boone County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of Boone County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible...for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted

19

and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an

20

unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has presented absolutely no facts supporting the proposition that his constitutional rights were violated due to an unconstitutional policy, custom, or failure to train on the part of Boone County.

With regard to policy, plaintiff points to no "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Boone County's] governing body" as being at issue in this case. Certainly, he presents no facts demonstrating that the handling of his criminal case and outcome of his jury trial was the result of "a deliberate choice of a guiding principle or procedure made by [a Boone County] official who has final authority regarding such matters." Rather, plaintiff's allegations – such as they are – focus on the individual participants in his criminal case, with no indication that their actions were dictated by anything that could be construed as Boone County policy.

As to custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" Boone County employees, much less that Boone County officials were deliberately indifferent to or authorized such misconduct. Indeed, plaintiff has not sufficiently alleged a single constitutional violation, let alone a persistent pattern comprising multiple violations.

Likewise, concerning a failure to train, plaintiff has not adequately demonstrated deliberate indifference. To show deliberate indifference, plaintiff must prove that Boone County "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." This is ordinarily done by alleging a "pattern of similar constitutional violations by untrained employees." As noted above, though, there is no indication that any such pattern exists.

21

To the extent that plaintiff is attempting to hold Boone County accountable merely for employing Prosecutor Gonzales, the Court notes that a municipality cannot be held liable simply because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under [42 U.S.C.] § 1983, a municipality...cannot be liable on a respondeat superior theory"). *See also Andrews v. Fowler*, 93 F.3d 1069, 1074 (8th Cir. 1996) ("A local government may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior").

For all these reasons, plaintiff has failed to state a municipal liability claim against Boone County. Therefore, the official capacity claim against Prosecutor Gonzales is subject to dismissal.

Similar to Judge Carpenter, even if plaintiff had sued Prosecutor Gonzales in an individual capacity, the claim would still fail on the basis of immunity.

Prosecutors are immune from 42 U.S.C. § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the State in a criminal prosecution. *Id.* On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id.*

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). For instance, "[t]he acts of preparing, signing, and filing a criminal complaint constitute

prosecutorial functions, as they are advocacy on behalf of the government." *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006).

Prosecutorial immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Sample*, 836 F.3d at 916. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018) (explaining "that a prosecutor is immune from suit even if he knowingly presented false, misleading, or perjured testimony or withheld or suppressed exculpatory evidence").

Based on plaintiff's allegations, Prosecutor Gonzales is clearly entitled to absolute prosecutorial immunity. The facts presented against Gonzales all relate to her functions as an advocate for the State in a criminal prosecution, including her actions during pretrial motions and hearings, a video deposition, and the trial itself. This immunity cannot be defeated even by allegations of improper motive, malice, vindictiveness, or self-interest. Therefore, any individual capacity claim against Gonzales is subject to dismissal.

### v.    Claim Against Public Defender Thompson

"The essential elements of a [42 U.S.C.] § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Green v. Byrd*, 972 F.3d 997, 1000 (8th Cir. 2020). Focusing on the first element, the Court notes that a defense attorney, whether appointed or retained, does not act under color of state law, and thus cannot be liable for the alleged deprivation

23

of constitutional rights under 42 U.S.C. § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (stating that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990) (stating that the Eighth Circuit "has repeatedly held that both retained and appointed attorneys are not liable for deprivations of constitutional rights under 42 U.S.C. § 1983 for the reason that they do not act under color of state law"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel").

Here, plaintiff is attempting to bring a 42 U.S.C. § 1983 claim against his public defender, alleging defective assistance of counsel. As discussed above, a public defender does not act under color of law when performing a defense counsel's traditional functions. Plaintiff's factual assertions regarding Public Defender Thompson, relating to the quality of her representation during a video deposition – in particular, her questioning of a witness – are within those traditional functions of a defense attorney. Because Thompson was not acting under color of law, it thus follows that plaintiff has failed to adequately allege an essential element of a § 1983 claim. Therefore, any claim against Thompson is subject to dismissal.

### vi.    Claims Against Haney, Barnhill, and Sullivan

As previously discussed, to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right."

24

*Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). With regard to the first element, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

When a private party acts under color of state law, it can be held liable under 42 U.S.C. § 1983. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). However, a private party may only be held liable "if it is a willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

In this case, Haney, Barnhill, and Sullivan are not state actors. They are not alleged to be law enforcement officers, correctional officers, or otherwise employed by state or local government. Rather, Haney and Barnhill appear to be private citizens who played some role in reporting plaintiff's criminal conduct, while Sullivan appears to be plaintiff's victim. Furthermore, there is no indication that Haney, Barnhill, and Sullivan were willful participants "in joint activity with the State or its agents," or came to any mutual understanding or meeting of the minds with the state. Again, as already noted, plaintiff seems to be asserting liability against these three

25

defendants because they were witnesses against him in his criminal case. This is not the purpose of 42 U.S.C. § 1983. Because Haney, Barnhill, and Sullivan are not alleged to have acted under color of law, plaintiff is missing an essential element of a § 1983 claim against them. Therefore, any claims against these three defendants are subject to dismissal.

### E. Motion to Appoint Counsel

Plaintiff has filed a motion for appointment of counsel. (Docket No. 3). The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(g) and 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice to the filing of a fully-paid complaint. *See* 28 U.S.C. § 1915(g) and 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 18th day of November, 2022.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE